UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OKECHUKWU UDUKO,                              Case No. 11-13765

        Plaintiff,                     Victoria A. Roberts
v.                                           United States District Judge

STEPHEN E. COZZENS, *et al.*,                Michael Hluchaniuk
                                             United States Magistrate Judge
        Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTIONS TO DISMISS (Dkt. 52, 59, 71)

## I.    PROCEDURAL HISTORY

Plaintiff, a prisoner in the custody of the federal Bureau of Prisons, filed this prisoner civil rights action on August 29, 2011.  (Dkt. 1).  Plaintiff alleges that he states claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Religious Freedom Restoration Act of 1993 ("RFRA"), the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and conspiracy under 42 U.S.C. §§ 1985(3) and 1986, based on events starting in August 2008 and continuing through March 2010.  On September 12, 2011, this case was referred to the undersigned for pretrial matters by District Judge Victoria A. Roberts.  (Dkt. 7).

On January 18, 2013, defendants Stephen E. Cozzens, Mukhtar Curtis, Arturo Aviles, Brett W. Ellis, Bryce Brown, John Cheatham, Kevin Toney, Tim

Duby, David Dolber, Dave Downing, Katie Murdock, Anthony Bozeman, R. Gubbins, and Christopher Zych (the "served defendants") filed a motion to dismiss.  (Dkt. 52).  Plaintiff filed a response to that motion on February 1, 2013.  (Dkt. 56).  The served defendants filed a reply brief on February 15, 2013 (Dkt. 58), and plaintiff filed a sur-reply brief on February 28, 2013.  (Dkt. 63).

On February 19, 2013, defendants Rick Smith and Michelle Doty filed their motion to dismiss in which they relied on the arguments in the served defendants' motion to dismiss and reply brief.  (Dkt. 59).  Plaintiff filed a response to defendant Smith and Doty's motion to dismiss on March 8, 2013 (Dkt. 64), and a reply brief in support of his opposition on March 15, 2013.  (Dkt. 66).

On April 1, 2013, defendant Phillip Guittierrez filed a motion to dismiss, relying on the arguments in the served defendants' motion to dismiss and reply brief.  (Dkt. 71).  Plaintiff filed his opposition to defendant Guittierrez's motion on April 12, 2013.  (Dkt. 71).  These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that the defendants' motions to dismiss be **GRANTED** in part and **DENIED** in part.

2

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Complaint

Plaintiff brings this complaint against numerous defendants, asserting claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Religious Freedom Restoration Act of 1993 ("RFRA"), the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and conspiracy under 42 U.S.C. §§ 1985(3) and 1986, based on events starting in August 2008 and continuing through March 2010.  (Dkt. 1).  The following facts are based solely on the allegations in plaintiff's complaint.  *See Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 467 (6th Cir. 2011) (noting that in a motion to dismiss, the court "constue[s] the complaint in the light most favorable to the plaintiff," and "accept[s] all well-pleaded factual allegations as true.") (internal quotation marks and citation omitted).

Plaintiff was an inmate representative for the Protestant faith group at the Federal Correctional Institution in Milan, Michigan.  During a meeting with defendant Cozzens on August 5, 2008, plaintiff objected to Cozzens's cancellation of a Protestant community retreat planned and scheduled for August 15 through 17, and threatened to lodge a complaint against Cozzens regarding the cancellation of the retreat.  Cozzens responded by threatening to remove plaintiff as the inmate representative for the Protestant faith group and making derogatory statements to

3

plaintiff regarding his race, national origin and religious denomination.  Plaintiff

lodged a complaint against Cozzens with defendant Curtis the next day, and

because of this protected conduct, defendants Cozzens and Curtis, along with

recruited inmate co-conspirators, retaliated and discriminated against plaintiff on or

about August 22, 2008, by supplying false allegations against plaintiff, which

Cozzens used to prepare a false investigation report and defendant Magulick then

used to prepare a detention order and remove plaintiff from the general population

to administrative detention in the Special Housing Unit ("SHU") on September 3,

2008.  Plaintiff was accused of using his position as the inmate representative for

the Protestant community to solicit illegal financial investments from other inmates

and their family members, and losing about $5,000.00 of an inmate's sister's

money in the stock market.  Plaintiff denied the allegations and he was eventually

cleared of all allegations against him on October 2, 2008, and released back to the

general population on October 3, 2008.

On October 6, 2008, the day after plaintiff had addressed the Protestant

congregation and stated that the allegations levied against him were false,

defendant Cozzens had a meeting with plaintiff and informed him that an

agreement had been reached with other defendants that (1) plaintiff will no longer

serve as the inmate representative or spokesperson for the Protestant community,

(2) he will not teach or preach to the Protestant community, (3) he will not instruct

Bible study group or lead in any Bible study discussion, (4) he will not facilitate any services or Bible study group as other inmates do, (5) he will not answer questions about the Bible or offer any other Biblical interpretation of the beliefs he holds and of the Biblical text, and (6) he will not "lord over" the Protestant community.  Plaintiff was told that he is only allowed to attend and participate in the services if he so desires.  Cozzens would not put these restrictions in writing. Defendant Curtis agreed to these restrictions "because of the issues concerning the investigation that led to [plaintiff] being placed in the (SHU)."

On October 7, 2008, after plaintiff's release from SHU, he discovered that about 117 of his religious books had been removed from his cell and destroyed while he was in administrative segregation.  Defendant Aviles told plaintiff: "That's what you get for going to the (D-Block)."  Later that same day, plaintiff asked defendant B. Brown that his name be placed back on the Unicor prior hiring list, but Brown refused and instead placed plaintiff's name at the bottom of the general Unicor hiring list because, Brown stated, he had to expend valuable time packing plaintiff's property out of his old cell when he was placed in SHU.  Brown also stated that plaintiff should not have voluntarily left Unicor in the first place.

Plaintiff participated in a Protestant interactive Bible study group on October 11, 2008, and subsequently was issued an incident report by defendant Ellis for failing to obey Cozzens's orders.  Plaintiff was told that if he continued to fail to

5

comply with Cozzens's orders, then he would be prohibited from attending and participating in any and all religious services and programs held in the chapel area. This incident report was subsequently expunged, but the restrictions on plaintiff's participation in religious services continued, although Cozzens still refused to put the restrictions down in writing.  Plaintiff attempted to seek an informal resolution of the restrictions in meetings with Cozzens several times between October 2008 and January 2009, but Cozzens refused to lift the restrictions.  On January 28, 2009, plaintiff informed Curtis that he intended to file a grievance over the restrictions, but Curtis urged plaintiff to try to resolve the matter with Chaplain L. Brooks first.  On January 31, 2009, inmate co-conspirator McCray wrote a false incident report against plaintiff.  After several meetings, plaintiff was informed that the restrictions imposed by Cozzens were permanent, and plaintiff then filed a complaint against Cozzens on February 16, 2009, for staff misconduct and abuse of authority.  Plaintiff filed a second complaint against Cozzens on February 21, 2009, regarding Cozzens's conduct at a meeting the day before.  Plaintiff attended an appreciation service on behalf of another inmate that same day, and was informed by defendant Ellis later that afternoon that another incident report had been written against plaintiff for disobeying Cozzens's orders, based on plaintiff's participation in the appreciation service.  Ellis then ordered plaintiff (1) not to participate in religious services held in the chapel area, (2) not to be seen around

6

the chapel area, and (3) not to step foot in the chapel, or he would be sent to SHU.

At the February 23, 2009, Unit Disciplinary Committee ("UDC") hearing on the February 21 incident report, plaintiff was found guilty and sanctioned to 30 days loss of commissary.  Plaintiff notified the UDC that he would appeal the decision, and defendant Aviles told plaintiff not to fight it or he would be moved out of his housing unit and into the inside yard unit, which is a dormitory and violent and filthy.  Plaintiff was informed that he was being moved to the inside unit about 10 minutes later because he had been found guilty of disobeying an order, and subsequently was moved to the inside unit on February 26, 2009. Plaintiff filed a grievance regarding Cozzens's restrictions on February 27, 2009, grievances challenging the UDC decision, the false incident reports dated October 11, 2008 and February 21, 2009, and the three additional sanctions by Ellis on March 11, 26, and 30 2009, and a grievance regarding Cozzens's verbal orders on March 26, 2009.  On April 3, 2009, in retaliation for filing the grievances, defendants removed plaintiff from the general population to Administrative detention.  Plaintiff subsequently learned that the February 21 incident report had been expunged, and plaintiff was released from the SHU back to the general population on June 3, 2009.

On November 7, 2009, plaintiff discovered that documents and legal materials had been removed from his locked locker, in retaliation for filing

7

grievances.  After plaintiff attended a Protestant service on November 21, 2009, Cozzens told plaintiff he was not allowed to prophesy, lay hands on or pray for anyone in service, Bible study group and prayer meeting group.  Plaintiff learned on December 2, 2009 that his approved visitor list had been altered and that his sister, Venonica Hill, had been removed from the list and replaced with Vick Venoncia Chable, an alleged unescorted volunteer.  Plaintiff was told that defendants Cozzens and Doty are the persons who handle volunteer information.

Plaintiff received a false incident report on December 15, 2009, written by Ellis, charging plaintiff with stealing food and refusing an order of staff, and was found guilty at the UDC hearing and sanctioned to removal from the preferred housing unit (H) to the inside unit for one year.  Plaintiff appealed that sanction, and the UDC decision was reversed and the false incident report expunged on December 22, 2009.  Plaintiff's doo-rag was confiscated on December 16, 2009, and plaintiff was not allowed to attend a Christmas worship service on December 25, 2009.  Defendant Cozzens did not allow plaintiff to pray for another inmate, Corey Schulz, on January 2, 2009, and threatened to write plaintiff up if he refused to adhere to the restriction.  On February 26, 2010, Warden Christopher Zych, responding to plaintiff's request to staff, lifted the restrictions on plaintiff and stated that plaintiff may practice the religious activities of leading a Bible study, including prayer, and prophesying, but only under the direct supervision and

8

oversight of the Chaplaincy Staff.  Warden Zych also reinstated plaintiff as one of the inmate representatives.  In retaliation, defendants Cozzens, Ellis, Toney and Dolber had plaintiff removed from his housing unit (H) to the SHU on a false investigation charge.  Plaintiff was released from the SHU back to H unit on March 24, 2010.

Plaintiff alleges that these facts give rise to fourteen separate claims of retaliation, discrimination, violation of the RFRA and RLUIPA, and conspiracy against the defendants.

## B.    Defendants' Motions to Dismiss[1]

Defendants argue that plaintiff's complaint is lengthy (alleging that the complaint is 81 pages and 191 paragraphs long, containing 14 causes of action) and confusing and does not meet the pleading requirements of Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," or Rule 8(d)(1), which directs that "[e]ach averment of a pleading shall be simple, concise, and direct."   Defendants contend that plaintiff "attempts to weave numerous alleged actions ranging over a two year period by twenty different defendants into an elaborate plot of conspiracy against

---

[1]  This section includes all defendants' arguments, even though the defendants filed three separate motions to dismiss at issue here.  The "served defendants" filed their motion to dismiss on January 18, 2013.  (Dkt. 52).  Defendants Rick Smith and Michelle Doty and defendant Phillip Guittierrez subsequently filed separate motions to dismiss, but they merely joined in the served defendants' motion to dismiss and also relied on the served defendants' reply brief.  The Smith, Doty and Guittierrez defendants did not offer any additional arguments.  (Dkt 59, 71).

him," including conspiring with inmates to make false accusations against plaintiff, violating his First Amendment right to practice his religion, changing his approved visitor list to deny him a visitor, falsely accusing him of stealing, confiscating a "doo-rag" from him, destroying his books and other property, and improperly transferring him to different housing units. Defendants generally argue plaintiff's claims are conclusory, argumentative and confusing, and that defendants should not be "required to expend time and effort searching through large masses of conclusory, argumentative, evidentiary and other extraneous allegations in order to discover whether the essentials of claims asserted can be found in such a mélange." (Dkt. 52, citing *Schied v. Daughtrey*, 2008 WL 5422680, at *1 (E.D. Mich. Dec. 29, 2008)).

Defendants also argue that plaintiff's allegations that defendants participated in a conspiracy against him are too vague and conclusory to state a claim. According to defendants, a conspiracy claim under § 1985(3) must "allege both a conspiracy and some class-based discriminatory animus behind the conspirator's actions." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 366 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 282 (2012). In addition, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim." *Id.* (citation omitted). According to defendants, plaintiff alleges that a conspiracy is shown in

10

Claims 1, 2, 3 and 5 merely because some of the charges against plaintiff turned out to be baseless, and because some of the defendants agreed with defendant Cozzens to take adverse actions against plaintiff. Defendants argue that these allegations are too conclusory and argumentative to state a claim. Defendants further argue that Claims 8 (falsification of plaintiff's visitor's list) and 11 (limiting plaintiff's participation in religious services) fail to state a claim for conspiracy because plaintiff fails to allege how defendants conspired against him in those claims. Defendants also contend that plaintiff fails to provide more than bare assertions and conclusory statements in support of Claim 13 that nineteen defendants participated in an elaborate plot of conspiracy against plaintiff over a two-year period. Defendants further argue that Claim 14 fails because plaintiff provides no evidence that any other defendant was aware of any alleged animus defendant Cozzens bore against plaintiff, other than a statement Cozzens allegedly made to plaintiff regarding his race, national origin and religion, or that seven of the other defendants agreed with Cozzens to restrict plaintiff's religious activities. This statement, defendants argue, only shows that the other defendants agreed with Cozzens, not that they conspired with him against plaintiff. Thus, defendants conclude, plaintiff's conspiracy claims should be dismissed for lack of specificity and to avoid protracted and disruptive litigation.

Defendants further argue that, to the extent Claims 4, 6, 7, 9, 10 and 12

11

allege that defendants retaliated against plaintiff for exercising his right to religious expression, or for accessing the prison grievance system, those claims should be dismissed because plaintiff provides only bare and conclusory statements in support of those claims.

Finally, defendants argue, even if plaintiff's complaint can be construed to state a claim, defendants are protected by the doctrine of qualified immunity with respect to plaintiff's claim concerning his removal as the leader of the Protestant faith group. Defendants contend they are not aware of any First Amendment right of a particular inmate, or even a private citizen, to lead religious services. Defendants recognize the prison inmates have a right to the free exercise of their religion, but argue that plaintiff points to no legal authority that would give him the right to serve as the leader of a faith group, and if no such right exists, it is not clearly established enough to make it sufficiently clear to defendants that denying plaintiff the right to lead a faith group would be unconstitutional. Therefore, defendants conclude, plaintiff's claims against defendants regarding his removal as leader of the faith group should be dismissed.

### C. Plaintiff's Response

Plaintiff responds that his complaint did comply with Rules 8(a)(2) and 8(d)(1), and gave defendants fair notice of the claims asserted against them and the grounds upon which the claims rest. Plaintiff contends he set forth the chronology

12

of events from which his retaliation, discrimination, and conspiracy claims can be inferred.  Further, plaintiff argues that he is required to plead and prove all the essential elements of his claims to avoid dismissal.  And plaintiff, as a *pro se* litigant, is entitled to have his complaint liberally construed.  Plaintiff argues that his complaint and the 19 exhausted administrative grievances attached gave all defendants fair notice of the allegations and claims against them individually and collectively.  Plaintiff avers that this finding is supported by this Court's prior ruling on defendants' "three strikes" motion, where the Court rejected defendants' assertion that plaintiff's complaint was incomprehensible and thus frivolous.  (Dkt. 33, Pg ID 799-801).

Plaintiff further argues that he has pleaded sufficient facts to state claims of retaliation, discrimination, violation of free religious speech, free religious exercise, and conspiracy to entitle him to relief.  Plaintiff contends that the Sixth Circuit has held that the conclusory nature of particular allegations cannot alone justify the dismissal of a complaint.  *See Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (citing *Erickson v. Pardus*, 551 U.S. 89 (2007)), *cert. denied*, 555 U.S. 1098 (2009).  According to plaintiff, to state a claim of retaliation, a plaintiff must plead that he engaged in protected conduct; that an adverse action was taken against him that is capable of deterring a person of ordinary firmness from continuing to engage in the protected conduct; that a causal connection existed between the

protected conduct and the adverse action; and that the adverse action was motivated at least in part by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). Plaintiff argues that he satisfies the notice pleading requirement to state a claim of retaliation in Claims 1, 2, 4-9, 12, and 13.

Plaintiff argues that to state a claim of discrimination, he must plead that a state or federal actor treated him differently than others, who were similarly situated; and that such unequal treatment was the result of intentional or purposeful discrimination because of plaintiff's membership in a protected class, such as race, national origin, or religious discrimination. Plaintiff argues that he satisfied the notice pleading requirement to state a claim of discrimination in Claims 13 and 14.

According to plaintiff, a conspiracy claim under § 1983 or *Bivens* more broadly covers conspiracies to deprive persons of Constitutional rights. Plaintiff contends that to state a claim of conspiracy under § 1983 or *Bivens*, he must plead that he engaged in protected conduct; that an adverse action was taken against him that is capable of deterring a person of ordinary firmness from continuing to engage in the protected conduct by the conspirators; that a causal connection existed between plaintiff's protected conduct and the adverse action taken against him; and that the adverse action was motivated at least in part because of his protected conduct. Plaintiff argues he satisfied the notice pleading requirements for a *Bivens* conspiracy claim in Claims 1 and 13 of his complaint. Plaintiff argues

14

Claim 14 satisfies a claim for conspiracy under § 1985(3), which requires plaintiff to plead a conspiracy involving two or more persons; for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws; and an overt act in furtherance of the conspiracy, which causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.

Plaintiff argues that Claims 3, 10 and 11 of his complaint state free exercise claims under the First Amendment and under the Religious Freedom Restoration Act of 1993 ("RFRA") and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  According to plaintiff, the First Amendment claims require plaintiff to plead that he was engaged in a protected conduct of free religious speech and free religious exercise; that the practice he seeks to protect is religious in his own "scheme of things"; that his religious conviction is sincerely held; and that the behavior of the defendants' infringed and burdened his sincerely held religious practice or belief without any valid penological interest advanced. The RFRA/RLUIPA claims require plaintiff to plead that he was engaged in a protected conduct of free religious speech and free religious exercise; that the practice he seeks to protect is religious in his own "scheme of things"; that his religious conviction is sincerely held; that the behavior of the defendants substantially burdened his sincerely held religious practice or belief without a compelling interest advanced by the use of the "least restrictive means."

15

Plaintiff further argues that defendants are not entitled to qualified immunity regarding plaintiff's conspiratorial and retaliatory removal as the inmate representative for the Protestant faith group.  Plaintiff contends that Program Statement 5360.09 provides for inmate-led services in section 7(d): Supervision of inmates - "ordinarily the level of supervision of inmate religious groups in secure facilities involving worship, study or meetings.  Inmate-led religious programs require constant staff supervision."  Also, according to plaintiff, conduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper motive, citing *Hoskins v. Lenear*, 395 F.3d 372 (7th Cir. 2005).  Plaintiff argues that he was engaged in protected conduct when he protested defendant Cozzens's intent to cancel a religious retreat, Cozzens's threat to remove plaintiff from his position as inmate representative and use of racial slurs against plaintiff, his race, national origin and religious denomination, and that when he lodged a complaint against Cozzens for those actions, defendants retaliated by removing him as inmate representative for his faith group.

Plaintiff further contends that dismissal on the basis of qualified immunity is generally made pursuant to a Rule 56 summary judgment motion, not Rule 12(b)(6) motion to dismiss, and plaintiff has not yet had an opportunity to initiate necessary discovery on this issue and thus dismissal is premature and should be

denied.  Plaintiff goes on to argue that defendants are not entitled to qualified immunity because plaintiff pled that his rights that were violated were clearly established at the time of defendants' conduct.

Finally, plaintiff renews his request in his complaint that this Court suspend the rules in this case due to plaintiff's prisoner status, that the Court deny defendants' motions to dismiss and enter a scheduling order for discovery prior to the filing of a motion for summary judgment.

### D.    Defendants' Reply Brief

Defendants again argue that plaintiff's complaint fails to provide a short and plain statement of his claims as required by the Rules, and that it is unclear which of plaintiff's claims apply to which statutes, how all of the events in his statement of facts are related, and how all of the defendants are linked to the allegations against them.  Rather, defendants contend that the "crux" of plaintiff's claims appears to be that all of the defendants joined together in a conspiracy against plaintiff that was somehow triggered by his dispute with defendant Cozzens. Defendants further argue that the fact that the Bureau of Prisons was able to respond to plaintiff's numerous administrative claims does not establish that he has a plausible claim against defendants.  Defendants contend they should not be required to expend time and effort searching through the conclusory, argumentative and other extraneous allegations to discover the essential claims

17

asserted.  And, defendants argue that plaintiff's contention that defendants are not

entitled to qualified immunity fails because the cases on which he relies,

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) and *Newsome v. Norris*, 888

F.2d 371 (6th Cir. 1989), do not control as both concern access to the court issues,

not the right to lead religious services.  In addition, defendants assert that the Sixth

Circuit "drew back" from the *Newsome* decision in *Pickelhaupt v. Jackson*, 364

Fed. Appx. 221, 226 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 218 (2010), and stated

that prisoners did not have any constitutionally-protected interest in a position of

employment.  Thus, defendants argue, there is no First Amendment right of a

prisoner to lead religious services.

### E.    Plaintiff's Sur-Reply Brief

Plaintiff again argues the defendants have failed to satisfy their burden of

coming forward with sufficient facts to show how plaintiff's complaint is "a

rambling or melange document," and that if defendants truly believe that plaintiff's

complaint is so unclear, defendants could have filed a motion for more definite

statement under Rule 12(e), but they did not.  Plaintiff asserts that his complaint

pleads enough facts to state a claim to relief, and the merits of the claims are not at

issue on a motion to dismiss.  Plaintiff further argues that the fact that the Bureau

of Prisons responded to plaintiff's 19 grievances that form the basis of this lawsuit

indicates that all the defendants had fair notice of the claims against them and the

18

grounds upon which they rest.

Plaintiff also contends that he has not asserted a claim for a First Amendment right of a particular inmate to lead religious services, and that defendants mischaracterize his complaint and have failed to identify which of plaintiff's claims presented such an allegation. Rather, plaintiff asserts that he alleges sufficient facts that he engaged in protected conduct of free religious speech, free religious exercise and the right to lodge a complaint, that defendants conspired to retaliate against him in response to that protected conduct, that he suffered an adverse action, that there is a causal connection between his protected conduct and the adverse action, and that the adverse action was substantially motivated at least in part by his protected conduct, and he therefore clearly stated claims for conspiracy, retaliation and discrimination. Plaintiff argues that defendants' qualified immunity defense fails because he has stated a clearly established right to free religious speech and free exercise of religious belief without any fear of retaliation, discrimination or conspiratorial response. Further, plaintiff contends that because qualified immunity is an affirmative defense, he is not required to anticipate it to state a claim, and that the court may dismiss plaintiff's complaint only if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleading.

19

Plaintiff also disputes that the Sixth Circuit "drew down" from the *Newsome* decision in *Pickelhaupt*, 304 Fed. Appx. 221, because in *Pickelhaupt*, the plaintiff's case was predicated on due process claims, not First Amendment claims, and *Pickelhaupt* did not overrule *Newsome's* holding that an individual, who has been subjected to direct and intentional retaliation for having exercised the protected right of expression, continues to suffer irreparable injury even after termination of some tangible benefit such as employment.

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)). And, while a complaint need not contain "detailed" factual allegations,

its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting Twombly, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (citations and internal quotation marks omitted). The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2).  A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."

*Erickson*, 551 U.S. at 94 (citation omitted).  Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the *pro se* complaint at issue.).

**B.     Analysis**

**1.     Plaintiff's complaint does not violate the pleading requirements of Fed. R. Civ. P. 8(a)(2) and 8(d)(1)**

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court applied *Twombly* in a prisoner civil rights lawsuit in *Erickson v. Pardus*, 551 U.S. 89 (2007).  That Court reiterated that a plaintiff is not required to plead specific facts; instead, the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson*, 551 U.S. at 93 (citation omitted).  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.  *Id.*

Defendants argue that plaintiff's 78 page, 191 paragraph complaint is lengthy and confusing and thus fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  The undersigned acknowledges that when a

22

pleading is so verbose that neither the court nor the defendants can readily identify the claims asserted, the complaint should be dismissed for failure to comply with the Federal Rules of Civil Procedure. *See e.g., Flayter v. Wisconsin Dep't of Corrs.*, 16 Fed. Appx. 507, 509 (7th Cir. 2001). However, the undersigned finds that while plaintiff's complaint is lengthy, on review of the complaint as a whole and considering the undersigned's obligation to read plaintiff's *pro se* complaint indulgently, plaintiff's complaint is not confusing or unreasonably prolix. Rather, the complaint contains a chronological, detailed statement of facts followed by fourteen separate causes of action, each listing the elements of the claims asserted and the facts supporting each element of the claim. Although the fourteen causes of action are not labeled, plaintiff has since affirmatively stated in his response that Claims 1, 2, 4-9, 12 and 13 state *Bivens* retaliation claims, Claims 13 and 14 state discrimination claims, Claims 1 and 13 also state *Bivens*-conspiracy claims, Claim 14 states a § 1985(3) conspiracy claim, and Claims 3, 10 and 11 state First Amendment and RFRA/RLUIPA claims. (Dkt. 56, Pg ID 968-71). The Court will hereafter construe plaintiff's complaint to assert those specific claims. Plaintiff's complaint thus gives fair notice of the claims asserted and the grounds upon which the claims rest. The complaint does not violate Rule 8(a)(2), and should not be dismissed on this basis.

**2.    Plaintiff's conspiracy claims - Claims 1, 13 and 14**

Defendants argue that plaintiff's allegations that defendants participated in a conspiracy against him are too vague and conclusory to state a claim. Defendants contend that it appears that the majority of plaintiff's claims allege that defendants joined together with defendant Cozzens in an elaborate plot of conspiracy against plaintiff, and that various overt actions taken against him over a two-year period constitute overt acts in furtherance of that conspiracy. Plaintiff asserted 14 separate "Claims" against defendants, but did not label those claims. Although defendants argue that Claims 1, 2, 3, 5, 8, 11, 13 and 14 all fail to state a claim for conspiracy, plaintiff has stated in his response to defendants' motion to dismiss that only Claims 1 and 13 state a claim of conspiracy under *Bivens*, and that only Claim 14 states a claim of conspiracy under § 1985(3). (Dkt. 56, Pg ID 970-71). Plaintiff thus does not assert that Claims 2, 3, 5, 8 or 11 state a conspiracy claim. Accordingly, the undersigned will address defendants arguments only as to Claims 1, 13 and 14.

### a.   Plaintiff's *Bivens* conspiracy claims (Claims 1, 13)

To state a claim for a *Bivens*[2] conspiracy, plaintiff must allege an agreement between two or more persons to act in concert to deprive a person of his Constitutional rights, and an overt act done in furtherance of that goal, causing

---

[2]  In *Bivens*, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 814-20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *Id.*

24

damages. *See Fuller v. Shartle*, 2012 WL 1068805, at *5 (N.D. Ohio Mar. 29, 2012) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985) (addressing a section 1983 conspiracy claim)). Express agreement among all the conspirators is not necessary to find the existence of a conspiracy. *Id.* Conspiracy claims must be pled with a degree of specificity. *Id.* (citing *Hamilton v. City of Romulus*, 409 Fed. Appx. 826, 835-36 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 2934 (2011)). While vague and conclusory allegations unsupported by material facts are insufficient, circumstantial evidence of an agreement among all conspirators may provide adequate proof. *Id.*

In Claim 1, plaintiff asserts that defendants Cozzens, Curtis and Magulick conspired and agreed to retaliate and discriminate against plaintiff for exercising free religious speech and religious beliefs in protesting the cancellation of the planned religious retreat and for lodging a complaint against Cozzens to Curtis regarding Cozzens's threats and racial slurs, by recruiting inmate co-conspirators on or about August 22, 2008 to supply false allegations to prepare a false report to initiate false investigations against plaintiff. Plaintiff claims that, as a result, he was removed from his housing unit (H) to the SHU on September 3, 2008, where his privileges were highly restricted, and that he spent 30 days in segregation on the false allegations. (Dkt. 1, ¶¶ 79-84). Defendants argue that plaintiff's allegations in Claim 1 are too conclusory and argumentative to state a claim for

25

conspiracy.  However, other than this bare assertion, defendants fail to provide any further explanation or argument as to why or how plaintiff's allegations are conclusory and/or argumentative.  A complaint filed by a *pro se* litigant is to be liberally construed.  *Erickson*, 551 U.S. at 94.  The undersigned finds that, although it is a close call, taking plaintiff's allegations as true, plaintiff has adequately plead the elements of a *Bivens* conspiracy claim in Claim 1 of his complaint—an agreement between two or more persons to act in concert to deprive plaintiff of his Constitutional rights, and an overt act done in furtherance of that goal, causing damages.  Plaintiff put defendants on notice of the relevant time period, the names of the alleged conspirators, and the object and purpose of the alleged conspiracy.  Defendants' motion to dismiss as to this claim should be denied.

In Claim 13, plaintiff asserts that nineteen defendants—Cozzens, Curtis, Guidry, Aviles, Ellis, Brown, Cheatham, Smith, Toney, Guittierrez, Duby, Dolber, Downing, Magulick, Doty, Murdock, Bozeman, Gubbins and Zych—all conspired and agreed to deprive plaintiff of his rights, privileges and immunities for lodging complaints and filing various grievances from August 6, 2008 to September 10, 2010, by restricting plaintiff's "active" participation in Protestant services, Bible study group and prayer meeting group, and by actually prohibiting plaintiff from prophesying and laying hands on and praying for inmate Corey Schulz on January

26

2, 2010.  (Dkt. 1, ¶¶ 163-72).  Plaintiff alleges that the defendants engaged in a series of overt acts over a two-year period of time as part of a single plan to injure him, including the acts alleged in Claim 1, as well as removing 117 books from his locker and destroying them, refusing to give him priority on the Unicor hiring list, writing several false incident reports against him, sanctioning his commissary rights, banning him from attendance and participation in all religious services and programs in the Chapel at Milan FCI, threatening him with transfer to an undesireable housing unit, recruiting more inmate co-conspirators to make false accusations against plaintiff in April 2009, removing personal items from his locker in December 2009, falsifying his visiting records in November 2009 to deprive him of a visitor, confiscating his "doo-rag" from him in December 2009 and denying him a meal, and again recruiting inmates to make false reports against him in March 2010.  (*Id.* ¶ 164).

It is well-settled that civil conspiracy claims "must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  The undersigned finds that plaintiff has not sufficiently alleged specific facts showing "the existence of an agreement or meeting of the minds to violate constitutional rights" or that the series of acts over the two-year time period were part of a single plan to unlawfully deprive plaintiff

of his constitutional rights to survive a motion to dismiss. The facts pleaded in plaintiff's complaint do not support the existence of any such agreement and concerted action to violate plaintiff's constitutional rights. Plaintiff simply alleges a series of distinct acts committed by different defendants and attempts to lump those acts together in an alleged conspiracy to "conspire and agree with each other upon a single plan to injure plaintiff . . . ." However, mere conclusory allegations of conspiracy (*i.e.*, a bare allegation that defendants "conspired" with each other) are insufficient to state a claim. *See Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997). And, it is insufficient to allege that "the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Novellino v. N.J. Dep't of Corr. Mountainview Youth*, 2011 WL 3418201, at *15 (D.N.J. Aug. 3, 2011) (citing *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)). Rather, a plaintiff must allege "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights[.]" *Harris*, 126 F.3d at 1196. Plaintiff has failed to do so here, and the undersigned finds that Claim 13 fails to state a claim for a *Bivens* conspiracy and should be dismissed.[3]

### b.    Plaintiff's section 1985(3) conspiracy claim

---

[3] The undersigned notes that plaintiff also alleges that the facts stated in Claim 13 also give rise to *Bivens* retaliation and/or discrimination claims. (Dkt. 56). Although the undersigned recommends a finding that Claim 13 fails to state a *Bivens* conspiracy claim, that finding does not address whether Claim 13 states a claim for *Bivens* retaliation and/or discrimination claims.

**(Claim 14**)

To state a claim for conspiracy to violate civil rights under § 1985(3), a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any rights or privileges of a citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994); *see also Moniz v. Cox*, — Fed. Appx. —, 2013 WL 216070, at *3 (6th Cir. Jan. 22, 2013), *petn. for cert. filed* (May 24, 2013). The plaintiff must allege that the conspiracy was motivated by racial or other class-based invidiously discriminatory animus. *Johnson*, 40 F.3d at 839.

Plaintiff alleges in Claim 14 that, from August 5, 2008 to March 24, 2010, defendants Cozzens, Curtis, Guidry, Aviles, Ellis, Brown, Cheatham, Smith, Toney, Guittierrez, Duby, Dolber, Downing, Magulick, Doty, Murdock, Bozeman, Gubbins and Zych conspired and agreed with recruited inmate conspirators William McCray, Jerome Bass, and "others" to retaliate and discriminate against plaintiff on the basis of race (Black), religious denomination (Pentecostal), and national origin (Nigerian), and that they agreed on a "single plan to injure plaintiff and cause injury to his person and property" with the unlawful objective of depriving him of his constitutional rights.  (Dkt. 1, ¶¶ 173-79).  As evidence for

29

this conspiracy, plaintiff refers to numerous statements allegedly made by Cozzens regarding plaintiff's race, religion and national origin, and that Curtis told him that Cozzens had animus toward plaintiff because plaintiff preached against the Seventh Day Adventists and that Cozzens wanted plaintiff restricted. (*Id.* ¶ 175). Plaintiff asserts that Cozzens coupled his threats with actual restrictions of plaintiff's protected rights, which he asserts revealed the conspiratorial agreement by the defendants, and asserts that Cozzens told plaintiff of an agreement among defendants to restrict plaintiff's protected rights. (*Id.*). The undersigned finds that plaintiff's complaint fails to state a § 1985(3) conspiracy claim. Plaintiff merely alleges that defendant Cozzens made various derogatory statements to plaintiff about his race, national origin and religion, and that the other defendants agreed with Cozzens's decision, on October 6, 2008, to restrict plaintiff's active participation in Protestant services, Bible study group and prayer meetings. (Dkt. 1, ¶ 178). Plaintiff fails to offer any facts to support his allegations that defendants acted in concert to violate plaintiff's constitutional rights, or any facts to support the existence of a "single plan," and thus fails to provide anything more than conclusory allegations of an alleged "single plan to injury plaintiff." Claim 14 thus is insufficient to state a cause of action for a § 1985(3) conspiracy against

defendants and should be dismissed.[4]

### 3.      Plaintiff's retaliation claims

Defendants argue that to the extent Claims 4, 6, 7, 9, 10, and 12 allege that

defendants retaliated against plaintiff for exercising his right to religious

expression or for accessing the prison grievance system, those claims fail.

Defendants broadly argue:

> To the extent that plaintiff is attempting to claim
> retaliation, his claim must fail. He provides only bare
> and conclusory statements in support of his claim.
> Conclusory allegations are insufficient to establish a
> retaliation claim. *Id.*, citing *Kensu v. Haigh*, 87 F.3d 172,
> 175 (6th Cir. 1996). Similarly, "bare allegations of
> malice are not enough" to establish the basis for a
> retaliation claim. *Id.*, citing *Crawford-El v. Britton*, 523
> U.S. 574, 588 (1998). A plaintiff must establish that his
> exercise of a protected right was a motivating or
> substantial factor behind the defendant's decision to take
> an adverse action against him. *Id.*, citing *Mount Healthy
> City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287
> (1977). Therefore, to the extent claims 4, 6, 7, 9, 10 and
> 12 are based upon a theory of retaliation, they should be

---

[4] The undersigned again notes that plaintiff also alleges that the facts stated in Claim 14 also give rise to *Bivens* discrimination claim (Dkt. 56), and thus a finding that Claim 14 fails to state a § 1985(3) conspiracy claim does not address whether Claim 14 states a claim for *Bivens* discrimination. In addition, plaintiff alleged in his opening statement in his complaint that he was also bringing a conspiracy claim under 42 U.S.C. § 1986. Plaintiff, however, failed to identify any of his Claims as stating a § 1986 conspiracy claim. (Dkt. 56). In any event, a finding that the complaint does not state a claim under § 1985 also compels a finding that there is no liability under § 1986 because § 1986 establishes a cause of action against a person who has knowledge of a conspiracy under § 1985 and "having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005). Because the undersigned recommends a finding that the complaint does not state a claim under § 1985, it necessarily follows that there can be no liability under § 1986. *Id.* at 316.

dismissed.

(Dkt. 52, Pg ID 918-19).  Defendants fail to analyze the specific claims at issue or to otherwise articulate how those claims are deficient.  It is not sufficient for a party to mention a possible argument "in a most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Indeed, a court need not make a party's case by scouring the various submissions to piece together appropriate arguments.  *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).  And, the court is not obligated to make defendants' case for them or to "wade through and search the entire record" for some specific facts that might support their motion.  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Simply, defendants have not satisfied their burden of coming forward with an analysis of plaintiff's complaint on which the court could possibly recommend dismissal of Claims 4, 6, 7, 9, 10 and 12 for failure to state a claim of retaliation.  Accordingly, defendants' motions to dismiss these retaliation claims should be denied.

### 4.    Qualified Immunity

Defendants assert that they are entitled to qualified immunity on plaintiff's claim concerning his removal as leader of the Protestant faith group.  The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendant bears the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court had established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

The Supreme Court revisited its decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied

33

was no longer sound based on several factors including judicial economy.  *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).  While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test.  *Id.* In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers.  Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."  *Id.* at 244-45.  "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.'"  *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

Defendants argue that they are protected by qualified immunity only with respect to plaintiff's claim concerning his removal as leader of the Protestant faith group.  Defendants do not assert that they are entitled to qualified immunity as to

34

plaintiff's claims concerning any of the other restrictions allegedly imposed by defendants.  Defendants assert that they are not aware of any First Amendment right of a particular inmate, or even a private citizen, to lead religious services.  Thus, defendants argue that a right to act as leader and inmate representative of a religious group is not a clearly established right, and plaintiff's claims against them regarding his removal as leader of the Protestant faith group should be dismissed.

The first step in determining whether a right was clearly established is to define the right itself, which requires honing in on the proper level of generality.  At the broadest level, plaintiff claims that defendants violated his right to freely exercise his religion and access to the courts.  Of course, those rights are clearly established.  However, if courts define rights at such a broad level, qualified immunity will virtually cease to exist.  Therefore, in *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court directed courts to define the right "in a more particularized, and hence more relevant, sense." *Id.* at 639.  Courts must focus on the "particular action" that the defendants took and inquire whether the "contours of the right [were] sufficiently clear that a reasonable official would understand that what he [was] doing violates that right." *Id.* at 640.  Thus, in *Wilson v. Layne*, 526 U.S. 603 (1999), the Court's qualified immunity analysis asked "whether a reasonable officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful," instead of the more

35

generalized question of whether the plaintiff's Fourth Amendment right against unreasonable searches and seizures was clearly established. *Id.* at 615. Similarly, in *Safford v. Unified School District No. 1 v. Redding*, 557 U.S. 364 (2009), the Court asked whether a thirteen-year-old student's right not to have her bra and underpants searched based on reasonable suspicion that she had prescription drugs was clearly established, instead of whether the more general Fourth Amendment right was clearly established. *Id.* at 366-67, 377. In both cases, the answer was no, and the government officials received qualified immunity. *Wilson*, 526 U.S. at 615; *Redding*, 557 U.S. at 377.

Applying this principle, courts confronting free exercise claims have inquired whether a reasonable officer would have known that a particular action or deprivation would interfere with a plaintiff's religious practices. *Compare Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) (granting defendants qualified immunity because Hasidic Orthodox Jewish inmate's right to grow his beard and side locks in contravention of prison grooming regulations was not clearly established) *with Rasul v. Rumsfeld*, 433 F. Supp.2d 58, 59, 61 (D.D.C. 2006) (denying defendants qualified immunity because Muslim detainees' right not to have their religious beards forcibly shaven or their Korans thrown in the toilet was clearly established). Thus, the relevant right at issue here is not plaintiff's general right to freely exercise his religion, but rather his specific right to be the inmate

36

representative for the Protestant faith group.

While it is well-established that prison officials violate a prisoner's free exercise of rights when they needlessly and intentionally prevent him from performing religious acts of central significance to his faith, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005), the undersigned notes that courts in other jurisdictions have found that an incarcerated individual "has no First Amendment right to lead or preach at religious services held for inmates."  *See, e.g., Spratt v. Wall*, 2005 WL 348315, at *4 (D.R.I. Jan. 13, 2005) (granting summary judgment on plaintiff's First Amendment claims because plaintiff can pray and participate in religious services, but he simply may not lead or preach at them) (citing *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988) (a prison need not permit "convicted felons, frocked or unfrocked, to conduct religious services in the prison")); *see also Phelps v. Dunn*, 965 F.2d 93, 101 (6th Cir. 1992) ("[I]n the absence of quite specific evidence of concrete discrimination on an impermissible ground, federal courts should not become involved in determining questions of selection of lay people for liturgical participation.").  The undersigned similarly finds that an inmate does not have a constitutionally-protected right to be the inmate representative for a certain religious group, so long as that restriction does not needlessly and intentionally prevent him from performing religious acts of significance to him.  Thus, to the extent plaintiff claims here that defendants

violated his right to be the inmate representative for the Protestant faith group,

defendants should be entitled to qualified immunity on that specific claim.

Plaintiff responds, however, that defendant's qualified immunity argument

fails because plaintiff has not made a specific claim that he has a right to lead

religious services.  As plaintiff confirmed in his response brief, he has only

asserted three claims for violation of his free exercise rights under the First

Amendment–Claims 3, 10 and 11.  In Claim 3, plaintiff alleges that defendants

purposefully and willfully restricted plaintiff's "active" participation in any

Protestant service, Bible study group, or prayer meeting group on October 6, 2008

(which included a restriction on serving as inmate representative, among five other

restrictions), and "banned" plaintiff's attendance and participation in any and all

religious services and programs held in the chapel at Milan FCI on February 21,

2009.  (Dkt. 1, ¶¶ 93-96).  In Claim 10, plaintiff alleges that defendants unlawfully

denied plaintiff's Christmas day worship service on December 25, 2009 without a

valid or reasonable penological interest.  (*Id.* ¶¶ 147-51).  And, in Claim 11,

plaintiff alleges defendants purposefully and willfully restricted plaintiff's "active"

participation in Protestant services, Bible study group, and prayer meetings on

November 21, 2009, and denied plaintiff the exercise of his protected rights on

January 2, 2010, when he was restricted from prophesying (speaking by divine

inspiration), laying hand on and praying for anyone in services, Bible study group

and prayer meeting group.  (*Id.* ¶¶152-55).  Thus, while plaintiff does allege that

defendant Cozzens threatened to remove plaintiff from the inmate representative

position on August 5, 2008, and removed plaintiff as the inmate representative on

October 6, 2008, plaintiff thus does not assert a specific First Amendment claim to

lead the Protestant faith group.

Rather, plaintiff's removal as inmate representative of the Protestant faith

group is only one of the many alleged restrictions in his complaint. Plaintiff asserts

that he complained about Cozzens's threat to remove him as inmate representative

and use of racial slurs against him, his race, national origin and religious

denomination.  Plaintiff, however, does not allege that as a First Amendment

claim.  Rather, he alleges that in retaliation for making those complaints,

defendants informed him that he would no longer serve as the inmate

representative **and** that he cannot: teach or preach to the Protestant community,

instruct Bible study group or lead in any Bible study discussion, facilitate any

services of Bible study group, answer questions about the Bible or offer any other

Biblical interpretation of the belief he holds and of the Biblical text, and he will not

"lord over the Protestant community."  (Dkt. 1, ¶ 22).  The defendants have failed

to assert they are entitled to qualified immunity as to plaintiff's remaining claims

regarding these other restrictions, or from the later alleged restrictions from

participating in religious services held in the chapel area, from being seen around

the chapel area or stepping foot in the chapel area.  (*Id.* ¶ 50).  Further, as plaintiff argues in his opposition brief, even if he does not have a constitutional right to be leader of the Protestant faith group, as defendants argue, "[c]onduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive."  *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (citing *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)).  Plaintiff here alleges that defendants filed false reports resulting in his placement in administrative segregation as the retaliatory action for his complaint against Cozzens' actions of threatening to remove him as inmate representative and using racial slurs.  Thus, the fact that plaintiff may not have a clearly established constitutional right to act as leader of the Protestant faith group is not fatal to his retaliation claims.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED** in part and **DENIED** in part.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 26, 2013                          s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

41

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on July 26, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Darlene M. Haas Awada, Lynn Marie Dodge</u>, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Okechukwu Udoko, ID# 04170-424, Moshannon Valley Correctional Institution, 555 Geo Drive, Phillipsburg, PA 16866 and Federal Transfer Center, P.O. Box 898801, Oklahoma City, OK 73189-8801</u>.

          <u>s/Tammy Hallwood</u>
          Case Manager
          (810) 341-7887
          tammy_hallwood@mied.uscourts.gov